#300024387
OTC
ORIGINAL
FILED-USDC-NDTX-DA
'26 JUN 8 PM1:51
JJF

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **RHONDA PRICE,**<br>Plaintiff,<br><br>v.<br><br>**VANCE AND HUFFMAN, LLC,**<br>Defendant. | Civil Action No.: 3-26CV1883-B<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff submits the following Exhibits in support of this Complaint:

- Exhibit A — Pre-Suit Demand Email Chain (March 31, 2026 – April 6, 2026), including Defendant's repeated denials and Plaintiff's good-faith settlement offers of $10,000 and $7,500
- Exhibit B — Text Message Screenshots documenting all seven (7) unauthorized text messages transmitted by Defendant from +1 (504) 732-3106 to Plaintiff's number 214-282-1346

## I. INTRODUCTION

1. This case arises from a debt collector's deliberate, repeated, and willful transmission of unsolicited automated text messages to the cellular telephone of a complete stranger — a Texas consumer who has never held an account with Defendant, never provided any form of consent to receive communications from Defendant, and who has no connection of any kind to the alleged debt Defendant sought to collect.

2. Between March 28, 2026 and May 10, 2026, Defendant Vance and Huffman, LLC transmitted at least seven (7) unauthorized text messages to Plaintiff Rhonda Price's cellular telephone number (hereinafter "the Subject Number"). Every message was addressed to a person named "REBECCA" and referenced a "Snap Finance" account. Plaintiff is not Rebecca. She has no Snap Finance account. She has no relationship with Defendant whatsoever. (See Exhibit B.)

3. When Plaintiff notified Defendant of the violations through a formal pre-suit demand on March 31, 2026, Defendant did not cease contact. It did not investigate. It did not apologize. It denied all wrongdoing in writing — and then sent additional text messages in April 2026 and beyond, demonstrating a pattern of willful, knowing noncompliance with federal and Texas consumer protection law. (See Exhibit A.)

4. Compounding the misconduct, Defendant represented in written correspondence to Plaintiff that it had **"immediately ceased all further communications"** upon learning that the messages had reached an unintended recipient. That representation was contradicted by subsequent events. Additional text messages were transmitted after that representation was made. (See Exhibits A and B.)

5. Defendant's conduct violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"); the Texas Automatic Dialing and Announcing Device statute; the Texas Business & Commerce Code Chapter 302; and the Texas Mini-TCPA, Tex. Bus. & Com. Code § 305.053. Each of the seven text messages constitutes a separate, independently actionable violation under each applicable statute.

6. Plaintiff seeks statutory damages for each violation, enhanced and trebled damages for Defendant's knowing and willful conduct, injunctive relief, and all other relief to which she is entitled under law.

## II. JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in Dallas County, Texas and received the unauthorized text messages on her cellular telephone while present in this District.

10. Defendant conducts business in Texas, directs text message communications to Texas residents, and engages in debt collection activities in this State, subjecting it to personal jurisdiction in this District.

## III. PARTIES

11. Plaintiff Rhonda Price is a natural person and resident of Dallas County, Texas. Plaintiff brings this action in her individual capacity.

12. Plaintiff is, and at all relevant times was, the subscriber and regular user of the Subject Number. Plaintiff is the "called party" within the meaning of the TCPA with respect to all communications at issue in this action.

13. Defendant Vance and Huffman, LLC ("Vance and Huffman" or "Defendant") is a limited liability company engaged in the business of debt collection. Defendant's principal place of business is located at 55 Monette Pkwy, Smithfield, Virginia 23430.

14. Defendant is a "debt collector" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6), and each text message transmitted by Defendant identified itself as "from a debt collector" and as "an attempt to collect a debt."

15. At all relevant times, Defendant acted through its agents, employees, officers, members, directors, and representatives, each of whom acted within the scope of their authority on Defendant's behalf.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Status and Registration

16. At all times relevant to this action, the Subject Number was registered on the National Do Not Call Registry maintained by the Federal Trade Commission pursuant to 47 U.S.C. § 227(c).

17. Plaintiff has no account, debt, loan, credit application, or contractual relationship of any kind with Defendant Vance and Huffman, LLC. No agreement, instrument, or document of any nature exists between Plaintiff and Defendant — including any arbitration agreement, mandatory arbitration clause, or class-action waiver — that would bind Plaintiff or require resolution of any dispute with Defendant outside of this Court. Any consent, agreement, or arbitration provision obtained from a prior subscriber or a different person in connection with a different account has no legal effect as to Plaintiff.

18. Plaintiff has no account, debt, loan, or contractual relationship of any kind with Snap Finance, the entity referenced in Defendant's text messages.

19. Plaintiff never provided her telephone number to Defendant, to Snap Finance, or to any person or entity in connection with any credit application or account from which Defendant could derive lawful consent to contact Plaintiff.

20. Plaintiff never provided prior express written consent — or any form of consent — to receive text messages from Defendant. On March 31, 2026, Plaintiff served written pre-suit notice on Defendant identifying the specific legal violations at issue, including violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41 et seq., and demanded remediation. That notice is attached as Exhibit A and satisfies the 60-day pre-suit notice requirement of Tex. Bus. & Com. Code § 17.505(a). More than 60 days elapsed between that written notice and the filing of this Complaint. Defendant refused to tender any remediation within the statutory period, rendering further notice futile.

### B. Defendant's Unauthorized Text Message Campaign

21. Between March 28, 2026 and May 10, 2026, Defendant transmitted at least seven (7) text messages to the Subject Number. All messages originated from the telephone number +1 (504) 732-3106 and directed recipients to www.payvhllc.com and/or 855-206-6697. **True and correct screenshots of all seven messages are attached hereto as Exhibit B.**

22. Each message was addressed to a person named "REBECCA" and referenced a "Snap Finance" account. Plaintiff is not "Rebecca." Plaintiff has no Snap Finance account.

23. The seven documented messages are as follows, with corresponding references to Exhibit B:

- March 28, 2026 at 3:00 PM — Message 1 (Exhibit B-1): Enrollment/opt-in message: "You'll receive acct messages from Vance and Huffman. # of messages varies. Message & data rates may apply. Questions? Call 855-206-6697. Reply STOP to opt out." This

unsolicited enrollment confirmation — which Plaintiff never requested — was itself an unauthorized communication.

- March 28, 2026 at 3:00 PM — Message 2 (Exhibit B-1): "Hello REBECCA. Please check your email for an important message from Vance & Huffman. You may also call us at 855-206-6697 or login to manage your account at www.payvhllc.com. This message is from a debt collector and is an attempt to collect a debt. Reply STOP any time to unsubscribe."
- March 29, 2026 at 4:50 PM — Message 3 (Exhibit B-2): "Hello REBECCA. We have a limited time to work with you before we must return your Snap Finance account to our client. See your options at www.payvhllc.com or call 855-206-6697. This text is from Vance and Huffman, a debt collector. Reply STOP any time to unsubscribe."
- April 25, 2026 at 5:28 PM — Message 4 (Exhibit B-2): [POST-NOTICE] "Hello REBECCA. Please check your email for an important message from Vance & Huffman. You may also call us at 855-206-6697 or login to manage your account at www.payvhllc.com. This message is from a debt collector and is an attempt to collect a debt. Reply STOP any time to unsubscribe." Transmitted 25 days after Plaintiff's formal pre-suit demand of March 31, 2026.
- April 27, 2026 at 8:07 AM — Message 5 (Exhibit B-3): [POST-NOTICE] "Hello REBECCA. We have a limited time to work with you before we must return your Snap Finance account to our client. See your options at www.payvhllc.com or call 855-206-6697. This text is from Vance and Huffman, a debt collector. Reply STOP any time to unsubscribe." Transmitted 27 days after the formal pre-suit demand.
- May 9, 2026 at 11:42 AM — Message 6 (Exhibit B-3/B-4): [POST-NOTICE] "Hello REBECCA. Please check your email for an important message from Vance & Huffman. You may also call us at 855-206-6697 or login to manage your account at www.payvhllc.com. This message is from a debt collector and is an attempt to collect a debt. Reply STOP any time to unsubscribe." Transmitted 39 days after the formal pre-suit demand.
- May 10, 2026 at 12:40 PM — Message 7 (Exhibit B-4): [POST-NOTICE] "Hello REBECCA. We have a limited time to work with you before we must return your Snap Finance account to our client. See your options at www.payvhllc.com or call 855-206-6697. This text is from Vance and Huffman, a debt collector. Reply STOP any time to unsubscribe." Transmitted 40 days after the formal pre-suit demand.

24. Plaintiff possesses screenshot documentation of each of the seven text messages described above. True and correct copies are attached as Exhibit B and incorporated herein by reference.

**C. Evidence of Automated Messaging System**

25. The text messages transmitted by Defendant bear the hallmarks of a commercial automated messaging platform, including but not limited to: (a) an automated enrollment or opt-in confirmation message as the first communication in the sequence (Exhibit B-1); (b) standardized, templated message language transmitted consistently across multiple messages; (c) a merge field for the recipient's name ("REBECCA") indicating database-driven, programmatic message generation; (d) uniform opt-out instructions directing

recipients to reply "STOP" to unsubscribe; (e) uniform branding, contact information, and payment portal URL across all messages; and (f) messages transmitted on a systematic schedule consistent with automated campaign delivery.

26. No individualized, manually-composed message contains an automated opt-in enrollment confirmation, a merge-field personalization field, and a standardized opt-out mechanism. The presence of all three in Defendant's messages is strongly indicative of the use of a commercial automated messaging platform.

27. The system used by Defendant is capable of storing telephone numbers, processing those numbers against a database, generating personalized messages from templates, and transmitting those messages without human intervention on a per-message basis.

**D. Defendant's Admission of Wrong-Number Contact and False Representation**

28. On March 31, 2026, Reese Parker, Director of Operations of Vance and Huffman, LLC, stated in writing: "Upon learning that the number had been reassigned and that the messages had reached an **unintended recipient, we immediately ceased all further communications to that number.**" (See Exhibit A, Email 2 of 5.) This written statement constitutes a judicial admission that Plaintiff was not the intended recipient and that Defendant had actual knowledge of the wrong-number contact.

29. That representation was false. As documented in Exhibit B (Screenshots B-3 and B-4), Defendant transmitted additional text messages on April 27, 2026 and on subsequent Saturday and Sunday dates — all ***after*** Defendant stated it had "immediately ceased all further communications." Defendant's written denial and continued texting demonstrate knowing, willful disregard of Plaintiff's rights.

30. Defendant's own written acknowledgment that the Subject Number had been "reassigned" and that the messages reached an "unintended recipient" negates any consent defense. Consent provided by a prior subscriber does not transfer to the current subscriber of a reassigned telephone number.

**E. Plaintiff's Pre-Suit Demand and Defendant's Willful Rejection**

31. On March 31, 2026, Plaintiff transmitted a formal pre-suit demand letter to Defendant at info@vhllc.co, identifying the specific legal violations, documenting the text messages, and offering to resolve all claims for $10,000. **A true and correct copy of the complete email correspondence is attached as Exhibit A.**

32. Reese Parker responded on March 31, 2026: "We firmly dispute that these two messages violate the TCPA, Texas ADAD, the DTPA, or any other law." No substantive legal justification was provided. (See Exhibit A, Emails 2 and 4 of 5.)

33. Plaintiff subsequently reduced her settlement demand to $7,500 as a final act of good faith. On April 6, 2026, Defendant again responded: "We firmly dispute that these two messages violate the TCPA, Texas ADAD, the DTPA, or any other law." (See Exhibit A, Email 5 of 5.)

34. Despite this documented pre-suit process — during which Defendant received actual written notice of each legal violation and rejected two settlement offers — Defendant continued

transmitting unauthorized text messages. This post-notice conduct supports a finding of willful and knowing violations under each applicable statute.

**F. Defendant's Compliance Failures**

35. Upon information and belief, Defendant failed to consult the FCC's Reassigned Numbers Database ("RND") prior to transmitting text messages to the Subject Number. The RND, established pursuant to the FCC's 2021 Report and Order, provides callers a mechanism to determine whether a telephone number has been reassigned to a new subscriber. Upon information and belief, Defendant's failure to utilize available reassigned-number verification procedures, including the RND, before transmitting messages to a reassigned number constitutes an independent compliance failure.

36. Defendant failed to maintain adequate internal do-not-call suppression lists or procedures to identify and exclude non-customers from its automated messaging campaigns.

37. Defendant failed to verify that the Subject Number was assigned to the intended debtor at the time the messages were transmitted.

38. Defendant failed to cease contact upon receiving Plaintiff's formal pre-suit demand, and instead transmitted additional messages after that demand was received, processed, and responded to.

## V. WRONG-NUMBER LIABILITY UNDER THE TCPA

39. Defendant's conduct falls within a well-established and recognized category of TCPA liability: wrong-number or reassigned-number violations, in which an automated messaging system contacts the current subscriber of a telephone number without consent because the number was previously held by — and associated with — a different person. It bears emphasis that the TCPA, 47 U.S.C. § 227, contains no exemption for debt collectors. Congress chose not to create one, no federal court has read one into the statute, and the FCC has never promulgated one. Defendant's characterization of its activities as "debt collection" does not reduce, limit, or eliminate its liability under the TCPA for automated communications transmitted to the wrong person.

40. Courts have consistently held that the TCPA protects the current subscriber of a telephone number, not the person who originally provided the number to the caller. Where a telephone number has been reassigned, any prior consent obtained from a different subscriber does not extend to the current subscriber. See Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242 (11th Cir. 2014); Reyes v. Lincoln Automotive Financial Services, 861 F.3d 51 (2d Cir. 2017). The Fifth Circuit has separately affirmed that the receipt of unsolicited text messages transmitted in violation of the TCPA constitutes a concrete injury sufficient to confer Article III standing, recognizing the cognizability of private TCPA actions in this Circuit. See Cranor v. 5 Star Nutrition, L.L.C., 998 F.3d 686 (5th Cir. 2021). Defendant may contend that the Supreme Court's decision in Facebook, Inc. v. Duguid, 592 U.S. 395 (2021), narrowed the definition of an automatic telephone dialing system under 47 U.S.C. § 227(a)(1) and that this affects Plaintiff's claims. That contention does not carry Defendant far. First, the wrong-number and reassigned-number theory of liability does not depend solely on the ATDS definition — it turns on the absence of consent from the current

subscriber, which is independently established here. Second, the automated enrollment sequence, merge-field personalization, database-driven name insertion, standardized opt-out instructions, and systematic campaign delivery documented in Exhibit B are consistent with a system that stores numbers and transmits messages in a manner encompassed by the ATDS definition even as construed in Duguid. Third, even if Duguid were to limit Count I in some respect, Plaintiff's state-law claims under the Texas ADAD statute and Tex. Bus. & Com. Code § 305.053 carry broader scope and are not restricted by the federal ATDS definition.

41. The United States District Court for the Southern District of Texas directly addressed this category of claim in Nkadi v. Arcon Credit Solutions, LLC, 2024 WL 4652828 (S.D. Tex. Oct. 31, 2024), holding that allegations that a plaintiff's telephone number was improperly drawn into automated collection efforts — without any connection between the plaintiff and the underlying account — are sufficient to proceed beyond the pleading stage. The facts of the present case are directly analogous.

42. Courts have also certified class actions arising from wrong-number automated communications, recognizing the systemic nature of such violations when debt collectors deploy automated platforms without adequate safeguards. See Swanson v. National Credit Services, Inc., No. C19-1504-RSL (W.D. Wash. May 31, 2022).

43. The FCC's 2021 Report and Order (In re Advanced Methods to Target and Eliminate Unlawful Robocalls, CG Docket No. 17-59) established the Reassigned Numbers Database specifically to address the risk of wrong-number contacts. Callers who use automated systems bear responsibility for verifying that a telephone number is still assigned to the consenting party before transmitting messages.

44. Defendant's own written acknowledgment — reproduced in **Exhibit A** — that the Subject Number had been "reassigned" and that the messages reached an "unintended recipient" is highly probative on the wrong-number liability question. Defendant cannot simultaneously admit it contacted the wrong person and contend that no violation occurred.

## VI. COUNT I — VIOLATION OF 47 U.S.C. § 227(B) UNAUTHORIZED AUTOMATED TEXT MESSAGES

45. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

46. The TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), prohibits the transmission of text messages to a cellular telephone number using an automatic telephone dialing system without the prior express consent of the called party.

47. Defendant transmitted seven (7) text messages to Plaintiff's cellular telephone using equipment and systems consistent with an automatic telephone dialing system, as evidenced by the materials contained in **Exhibit B** and as described in Paragraphs 25-27 above.

48. Plaintiff is the called party. Plaintiff never provided prior express consent to receive text messages from Defendant. Any consent purportedly obtained from a prior subscriber of the Subject Number is legally invalid as to Plaintiff and does not constitute prior express consent within the meaning of 47 U.S.C. § 227(b). The TCPA expressly prohibits automated communications to cellular telephone numbers by 'any person,' 47 U.S.C. §

227(b)(1)(A), and contains no exemption for debt collectors. Defendant may not invoke its status as a debt collector as a defense, safe harbor, or limitation on its TCPA liability. Furthermore, any prior express written consent rule promulgated by the FCC pertaining to debt collection calls does not rescue Defendant here, because Defendant itself acknowledged in writing that it contacted the wrong person — a subscriber who provided no consent of any kind.

49. Each of the seven (7) text messages constitutes a separate and independent violation of 47 U.S.C. § 227(b). Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff is entitled to a minimum of $500 per violation, and up to $1,500 per violation for violations that are knowing or willful.

50. The text messages transmitted after Plaintiff's pre-suit demand occurred after actual written notice of the alleged violations and support a finding of willful and knowing conduct. The remaining messages reflect knowing disregard of the risk of contacting non-consenting parties through an automated system without adequate safeguards.

51. Plaintiff seeks $1,500 per violation for all seven violations, for a total of $10,500 under this Count, together with injunctive relief and all other relief available under 47 U.S.C. § 227(b)(3).

## VII. COUNT II — VIOLATION OF 47 U.S.C. § 227(C) NATIONAL DO NOT CALL REGISTRY

52. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

53. 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) prohibit initiating telephone solicitations to residential subscribers who have registered their telephone numbers on the National Do Not Call Registry.

54. The Subject Number was registered on the National Do Not Call Registry at all times relevant to this action. Defendant had no prior established business relationship with Plaintiff and had not obtained her written consent.

55. To the extent the communications at issue constitute telephone solicitations within the meaning of 47 U.S.C. § 227(c) and applicable regulations — a factual and legal question to be resolved in the course of this litigation, including through discovery into the nature and purpose of Defendant's messaging campaign — each such message constitutes a separate violation. Plaintiff seeks up to $1,500 per applicable violation under this Count and preserves this claim in full.

## VIII. COUNT III — TEXAS ADAD STATUTE AUTOMATED DIALING AND ANNOUNCING DEVICE

56. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

57. Texas law restricts the use of automatic dialing and announcing devices and similar automated communication systems. Tex. Util. Code §§ 55.121 et seq. The Texas ADAD statute's restrictions have been applied to automated text messaging campaigns, which constitute automated communication systems within the meaning of the statute and are not limited to traditional voice or recorded-message calls. Liability under the Texas ADAD statute is

independent of any telemarketing classification and is not constrained by the federal ATDS definition as narrowed in Facebook, Inc. v. Duguid, 592 U.S. 395 (2021).

58. The system used by Defendant to transmit the seven text messages at issue — as documented in **Exhibit B** — exhibits the characteristics of an automated dialing or announcing device: automated enrollment notifications, merge-field personalization, templated content, standardized opt-out instructions, and systematic delivery.

59. Each of the seven (7) messages constitutes a separate violation of the Texas ADAD statute. Plaintiff seeks statutory damages for each violation, together with all other relief available under Texas law.

## IX. COUNT IV — TEXAS BUSINESS & COMMERCE CODE, CHAPTER 302 TELEPHONE SOLICITATION REGISTRATION VIOLATIONS

60. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

61. Texas Business & Commerce Code, Chapter 302 governs telephone solicitation directed to Texas residents through automated platforms and requires compliance with applicable registration requirements.

62. Defendant directed automated text message communications to a Texas resident without ensuring compliance with Texas registration requirements. Each message constitutes a separate violation. Plaintiff seeks all available statutory penalties and other relief.

## X. COUNT V — TEXAS BUSINESS & COMMERCE CODE § 305.053 TEXAS MINI-TCPA

63. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

64. Texas Business & Commerce Code § 305.053 prohibits initiating automated communications to a Texas resident's cellular telephone number without prior express written consent. To the extent Defendant contends that its debt-collection activities fall outside the definition of 'telephone solicitation' for purposes of a standalone solicitation claim, § 305.053 provides an independent basis for liability as a pass-through to federal TCPA violations: a violation of 47 U.S.C. § 227 by a caller who initiates an automated communication to a Texas resident is independently actionable under § 305.053. Plaintiff's claims under this Count are not dependent on a finding that the communications constituted telephone solicitations, and the debt-collection context does not extinguish this Count.

65. Defendant initiated seven (7) automated text message communications to Plaintiff's cellular telephone without Plaintiff's prior express written consent. True and correct screenshots of those messages are attached as **Exhibit B**.

66. All seven violations were knowing. The violations on and after April 27, 2026 occurred after Defendant received actual written notice of the claimed violations and support a finding of willful and knowing conduct. Plaintiff seeks $1,500 per violation for all seven violations under this Count, for a total of $10,500.

## XI. DAMAGES

67. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including invasion of privacy, intrusion upon seclusion, loss of use and enjoyment of her cellular telephone, confusion and distress caused by the erroneous implication of a debt relationship, and the expenditure of time and resources to document and address the violations.

68. Plaintiff's statutory damages are as follows:

| Claim | Violations | Max Exposure |
|---|---|---|
| TCPA § 227(b) — Unauthorized Auto-Texts (Willful) | 7 × $1,500 | $10,500 |
| TCPA § 227(c) — Do Not Call Registry (Willful) | 7 × $1,500 | $10,500 |
| Texas Mini-TCPA § 305.053 (Willful) | 7 × $1,500 | $10,500 |
| Texas ADAD — Automated System | 7 violations | Statutory |
| Texas Ch. 302 — Registration Violations | Per violation | Statutory |
| **TOTAL STATUTORY EXPOSURE (pre-trebling)** | | **$35,000+** |

69. The foregoing statutory damages are subject to the Court's discretion to award enhanced damages under the TCPA for willful violations. When Texas statutory enhancements are considered, Defendant's total exposure substantially exceeds $31,500.

70. Plaintiff also seeks injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) and Tex. Bus. & Com. Code § 305.053, permanently enjoining Defendant from transmitting any further communications to the Subject Number.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rhonda Price respectfully requests that the Court:

- Enter judgment in Plaintiff's favor on all counts;
- Award Plaintiff statutory damages under 47 U.S.C. § 227(b)(3) of $1,500 per violation for each of the seven (7) knowing and willful violations, for a total of $10,500;
- Award Plaintiff statutory damages under 47 U.S.C. § 227(c)(5) of $1,500 per violation for each applicable violation, to the extent such violations are established;
- Award Plaintiff statutory damages under Tex. Bus. & Com. Code § 305.053 of $1,500 per knowing/willful violation for each of the seven (7) violations, for a total of $10,500;
- Award Plaintiff statutory damages under the Texas ADAD statute for each of the seven violations;
- Enter permanent injunctive relief prohibiting Defendant from transmitting any further communications of any kind to the Subject Number;
- Award Plaintiff pre-judgment and post-judgment interest at the maximum rate permitted by law;

- Award Plaintiff costs of suit; and
- Grant Plaintiff such other and further relief as this Court deems just and proper.

## XIII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and the Seventh Amendment to the United States Constitution, Plaintiff Rhonda Price demands a trial by jury on all claims and issues so triable.

---

Respectfully submitted,

**Rhonda Price**
Pro Se Plaintiff
priceaggies@gmail.com
Dallas County, Texas
Date: June 9, 2026

1208 Sylvia St.
DeSoto, TX 75115

# EXHIBIT A

Email Correspondence — Pre-Suit Demand and Defendant's Responses

(March 31, 2026 – April 6, 2026)

---

**EMAIL 1 OF 6 — INITIAL PRE-SUIT DEMAND**

**From:** Rhonda Price <priceaggies@gmail.com>

**To:** Vance & Huffman <info@vhllc.co>

**Date:** Tuesday, March 31, 2026 at 1:14 PM (Eastern) / 12:14 PM (Central)

**Subject:** Pre-Suit Demand - TCPA and Texas Law Violations (Rhonda Price)

I am writing on behalf of myself, Rhonda Price, regarding unlawful text message communications sent by or on behalf of Vance and Huffman. This letter serves as a formal pre-suit demand and an opportunity to resolve this matter without litigation.

FACTUAL BACKGROUND: I received unsolicited text messages associated with Vance and Huffman at telephone number 214-282-1346. At the time these messages were sent: My telephone number was listed on the National Do Not Call Registry; I had no prior business relationship with Vance and Huffman; I had not provided prior express written consent to receive any such communications; I do not have any debt, account, or relationship whatsoever with Vance and Huffman.

LEGAL VIOLATIONS: (1) TCPA 47 U.S.C. § 227(b) — sending automated text messages without prior express consent; (2) TCPA 47 U.S.C. § 227(c) — contacting a number on the National Do Not Call Registry; (3) Texas ADAD — use of automated dialing/messaging system without consent; (4) Texas Telemarketing Registration Violations; (5) Texas Deceptive Trade Practices Act (DTPA). Each message constitutes a separate violation.

GOOD FAITH SETTLEMENT OPPORTUNITY: I am willing to settle all claims for $10,000. Please provide your response within 10 days.

Respectfully, Rhonda Price | priceaggies@gmail.com

---

**EMAIL 2 OF 6 — DEFENDANT'S FIRST RESPONSE**

**From:** Reese Parker, Director of Operations <rparker@vhllc.co>

**To:** Rhonda Price <priceaggies@gmail.com>

**Date:** Tuesday, March 31, 2026 at 1:13 PM (Central)

**Re:** Pre-Suit Demand - TCPA and Texas Law Violations (Rhonda Price)

Dear Ms. Price,

Thank you for your email.

The two text messages at issue were sent in a good-faith attempt to contact the individual who provided the telephone number 214-282-1346 on her credit application. That application included her express consent for communications, including by text, regarding the account.

We made these attempts as part of legitimate debt collection efforts on an account where the individual herself provided the number and consented to text communications. Upon learning that the number had been reassigned and that the messages had reached an unintended recipient, we immediately ceased all further communications to that number.

We respectfully dispute the allegations in your letter, including any claim regarding the National Do Not Call Registry. Debt collection communications are generally exempt from the Do Not Call Registry rules when attempting to reach the individual who provided the number with consent. These texts were not part of any telemarketing or

solicitation campaign. They were sent solely for the purpose of contacting the individual who provided the number with consent.

We do not believe the communications violate the TCPA, Texas law, or the DTPA. We have preserved all relevant records related to this matter.

**[NOTE: Defendant here made two critical admissions: (1) it 'immediately ceased all further communications' upon learning of the wrong number — a representation proven false by Exhibit B; and (2) it explicitly characterized these messages as non-solicitation debt collection communications, thereby conceding that no solicitation exemption shields Plaintiff's claims under 47 U.S.C. § 227(b).]**

Reese Parker | Director of Operations | Vance & Huffman LLC | 55 Monette Pkwy, Smithfield, VA 23430

---

**EMAIL 3 OF 6 — PLAINTIFF'S RESPONSE TO DENIAL**

**From:** Rhonda Price <priceaggies@gmail.com>
**To:** Reese Parker <rparker@vhllc.co>
**Date:** Tuesday, March 31, 2026 at 2:52 PM (Central)

Dear Reese,

I understand your position that the messages were intended for a different individual who allegedly provided consent. However, even accepting that assertion, it does not resolve the core issue — you contacted my telephone number, 214-282-1346, without consent from its current subscriber.

You acknowledge that the messages reached an unintended recipient. Consent provided by a third party does not transfer to a different individual assigned to the number. The use of an automated system to contact a number without confirming the identity of the current subscriber reflects a compliance failure.

Additionally, your response does not address: (1) the use of an automated dialing system, which remains actionable under Texas law regardless of how the messages are characterized; (2) whether you performed any reassigned number or verification checks prior to sending; (3) whether you maintain internal do-not-call procedures or suppression lists.

The messages themselves included standardized opt-out instructions ('reply STOP'), which further indicates the use of a programmed or platform-based messaging system rather than a one-off manual communication. My settlement demand of $10,000 remains open for a limited time.

Respectfully, Rhonda Price

---

**EMAIL 4 OF 6 — DEFENDANT'S CONTINUED DENIAL**

**From:** Reese Parker, Director of Operations <rparker@vhllc.co>
**To:** Rhonda Price <priceaggies@gmail.com>
**Date:** Tuesday, March 31, 2026 at 2:43 PM (Central)

We firmly dispute that these two messages violate the TCPA, Texas ADAD, the DTPA, or any other law.

Reese Parker | Director of Operations | Vance & Huffman LLC

---

**EMAIL 5 OF 6 — PLAINTIFF'S SECOND SETTLEMENT OFFER (April 6, 2026)**

**From:** Rhonda Price <priceaggies@gmail.com>
**To:** Reese Parker <rparker@vhllc.co>

**Date:** Monday, April 6, 2026 at 2:22 PM (Central)

I have carefully considered your position and, in light of your responses, have prepared a formal complaint for filing. Your position relies on the assertion that the messages were sent to a 'wrong number.' However, courts have consistently recognized that contacting a reassigned or incorrect number using automated or system-based messaging without consent from the current subscriber remains actionable under the TCPA and applicable state law. See Nkadi v. Arcon Credit Solutions, LLC, 2024 WL 4652828 (S.D. Tex. Oct. 31, 2024).

Defendant's own acknowledgment that the messages reached an unintended recipient confirms that no consent existed with respect to my number. I made a good-faith effort to resolve this matter directly. As a final courtesy, I am willing to accept $7,500 as a full and final resolution of all claims. This offer will remain open for 48 hours.

Respectfully, Rhonda Price | priceaggies@gmail.com

---

**EMAIL 6 OF 6 — DEFENDANT'S FINAL REJECTION (April 6, 2026)**

**From:** Reese Parker, Director of Operations <rparker@vhllc.co>

**To:** Rhonda Price <priceaggies@gmail.com>

**Date:** Monday, April 6, 2026 at 2:53 PM (Central)

We firmly dispute that these two messages violate the TCPA, Texas ADAD, the DTPA, or any other law.

Reese Parker | Director of Operations | Vance & Huffman LLC

**[NOTE: The $7,500 offer was rejected without substantive response. Defendant subsequently transmitted three additional text messages on April 25, 2026 (5:28 PM), April 27, 2026 (8:07 AM), May 9, 2026 (11:42 AM), and May 10, 2026 (12:40 PM) — all after this correspondence and after Defendant's written representation that contact had 'immediately ceased.' See Exhibit B.]**

---

— End of Exhibit A —

# EXHIBIT B

Text Message Screenshots — Unauthorized Messages Transmitted by Defendant

Phone Number Receiving Messages: 214-282-1346 | Sender: +1 (504) 732-3106

All messages directed to www.payvhllc.com | Referenced: Snap Finance Account

---

NOTE: Screenshots B-1 and B-2 below document Messages 1–4, including the initial enrollment text (March 28, 2026) and the first substantive messages through March 29, 2026, and April 25, 2026.

| **Screenshot B-1: Mar 28 – Enrollment + First Message** | **Screenshot B-2: Mar 29 + Apr 25 (POST-NOTICE)** |
|---|---|







NOTE: Screenshots B-3 and B-4 below document Messages 5–7, including the April 27, 2026 (8:07 AM), May 9, 2026 (11:42 AM), and May 10, 2026 (12:40 PM) messages — all transmitted after Plaintiff's formal pre-suit demand of March 31, 2026. These post-notice messages confirm willful conduct.

# EXHIBIT B (CONTINUED)

POST-NOTICE MESSAGES — Transmitted After Formal Pre-Suit Demand (March 31, 2026)

**Screenshot B-3: Apr 27 (POST-NOTICE) + Saturday**




**Screenshot B-4: Saturday + Sunday Messages**




**DEFENDANT CLAIMED TO HAVE 'IMMEDIATELY CEASED ALL FURTHER COMMUNICATIONS' ON MARCH 31, 2026. THE ABOVE SCREENSHOTS PROVE THAT REPRESENTATION WAS FALSE.**

— End of Exhibit B —